UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ X

THE NEW YORK TIMES COMPANY and CHARLIE
SAVAGE,                                         :

                      Plaintiffs,        :

                v.                        :

UNITED STATES DEPARTMENT OF JUSTICE,            :

                    Defendant.        :

_____X

                                       **COMPLAINT**

Plaintiffs THE NEW YORK TIMES COMPANY and CHARLIE SAVAGE (together, "The Times"), by and through their undersigned attorneys, allege as follows:

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), to obtain an order for the production of agency records from the United States Department of Justice ("DOJ") in response to requests properly made by The Times.

## **PARTIES**

2.      Plaintiff Charlie Savage is a reporter at *The New York Times*.

3.      Plaintiff The New York Times Company publishes *The New York Times* newspaper and www.nytimes.com. It is headquartered at 620 Eighth Avenue, New York, New York, 10018.

4.      Defendant DOJ is an agency of the federal government that has possession and control of the records that The Times seeks.

## **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6.      Venue is premised on The New York Times Company's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

7.      FOIA requires that agencies respond to FOIA requests within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A). If an agency determines that "unusual circumstances" apply and has satisfied the procedural requirements to invoke it, such as providing timely written notice to the requester, FOIA gives the agency an additional 10 business days to respond. *See id.* § 552(a)(6)(B).

8.      DOJ has failed to meet the statutory deadlines set by FOIA. *See id.* § 552(a)(6)(A), (B). The Times is therefore deemed to have exhausted all administrative remedies, pursuant to 5 U.S.C. § 552(a)(6)(C).

## FACTS

9.      This case concerns two FOIA requests related to aspects of the special counsel investigation, led by John Durham, into the origins of the F.B.I.'s investigation (codenamed Crossfire Hurricane) into Russian interference during the 2016 presidential campaign and elections. The current administration has declassified certain materials from Mr. Durham's investigation that have shed greater light on that investigation but also raised new questions about what happened. The records sought by The Times here would give the public a fuller picture of Mr. Durham's inquiry.

### The Investigation of Crossfire Hurricane

10.     Crossfire Hurricane began in July 2016 and was taken over by Special Counsel Robert S. Mueller III in May 2017. In March 2019, Mr. Mueller submitted a report to then Attorney General William P. Barr. It "identified numerous links between the Russian government and the Trump Campaign," but did not find evidence sufficient to establish the

elements of a criminal conspiracy between the Trump campaign and the Russian government. U.S. Department of Justice, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, Vol. 1 (March 2019), at 1-2, https://bit.ly/40Uvuwn.

11.    Mr. Barr appointed Mr. Durham in May 2019 to conduct an administrative review of the origins of Crossfire Hurricane, elevating him to special counsel status in October 2020. Charlie Savage, Adam Goldman, and Katie Benner, *How Barr's Quest to Find Flaws in the Russia Inquiry Unraveled*, N.Y. Times (Jan. 26, 2023), https://nyti.ms/4bREXuz.

12.    Mr. Durham's task included examining whether the F.B.I.'s counterintelligence suspicions about possible collusion between the Trump campaign and Russia had stemmed not from their own words and actions, but because of some kind of hidden manipulations. *Id.* He initially pursued Mr. Barr's hunch that abuses by the C.I.A. and/or an intelligence agency of a Western ally might lurk in the origins of Crossfire Hurricane. *Id.* But Mr. Durham failed to find evidence supporting this theory, as Mr. Barr disclosed in an interview after the 2020 election. *Id.*

13.    By mid-2020, Mr. Barr and Mr. Durham had shifted to a pursuing a different theory: that after the release of hacked Democratic emails disrupted the July 2016 Democratic National Convention, Hillary Clinton and her campaign engaged in a conspiracy to frame Mr. Trump. *Id.* The origin story for this theory came from purported Russian intelligence information that the United States government had indirectly obtained. *Id.*

14.    In the late summer of 2020, at the request of Mr. Barr, Mr. Durham's team wrote an interim report "centered on the Clinton campaign and F.B.I. gullibility or willful blindness." *Id.* In early September 2020, Nora Dannehy, who was then Mr. Durham's longtime aide and the No. 2 on the inquiry (and who would go on to become a justice on the Connecticut Supreme Court), discovered that this report had been drafted without her knowledge. *Id.* She wrote a

memo detailing her concerns both about the impropriety of issuing any report before an investigation was complete and right before an election, and about the substance of the report's conclusions. *Id.* Ms. Dannehy sent the memo and then resigned. *Id.*

15.     Ms. Dannehy confirmed some of the reporting on this subject during her judicial confirmation hearing in September 2023. Mark Pazniokas, *Nora Dannehy says Barr meddled in Trump-Russia probe*, CT Mirror (Sept. 20, 2023), https://bit.ly/4duUGkz. She said that her "conscience did not allow [her] to remain" part of the investigation after seeing the interim report, and that she had "strongly disagreed" with its conclusions. *Id.*

16.     Mr. Durham and Mr. Barr ultimately did not release the interim report. *How Barr's Quest to Find Flaws in the Russia Inquiry Unraveled.*

17.      But the Trump administration declassified and found a different way to make public, ahead of the election, some of what was apparently the same information. On September 29, 2020, John Ratcliffe, then the Director of National Intelligence, sent Senator Lindsey Graham a letter disclosing the existence of Russian intelligence information about a plan purportedly approved by Mrs. Clinton in late July 2016 to stir up a scandal by tying Mr. Trump to Russia. Letter from John Ratcliffe to Lindsey Graham (Sept. 29, 2020), http://bit.ly/4uN6CV4. Mr. Ratcliffe's letter also noted that the U.S. intelligence community "does not know the accuracy of this allegation or the extent to which the Russian intelligence analysis may reflect exaggeration or fabrication." *Id.*

18.     On May 12, 2023, upon the conclusion of his investigation, Mr. Durham delivered to then Attorney General Merrick Garland a 306-page unclassified report (the "Report"), plus a "classified appendix" (the "Appendix"). (The Appendix is attached to this Complaint as Exhibit A.) Letter from John H. Durham to Merrick B. Garland with Report (May 12, 2023),

4

https://bit.ly/4d5AvJW. Mr. Garland released only the unclassified Report on May 15, 2023. Charlie Savage *et al.*, *Durham Finds Fault With F.B.I. Over Russia Inquiry*, N.Y. Times (May 15, 2023), https://nyti.ms/4cVZYWe.

19.    The Report dealt at length with the declassified claim from the Ratcliffe letter, criticizing the F.B.I. for not being more cautious in light of what Mr. Durham repeatedly called the "Clinton Plan intelligence." The Report subtly hedged about whether Mr. Durham actually believed it was authentic.

20.    Two years later, the Appendix would become public, in part. On July 15, 2025, Senator Charles Grassley wrote to President Trump, requesting its declassification and arguing that "the overriding public interest demands the release of this information, and doing so would benefit public transparency and accountability." Letter from Charles E. Grassley to Donald J. Trump (July 15, 2025), https://bit.ly/47m1mh3.

21.    The administration partly declassified the Appendix and provided a redacted version to Mr. Grassley, who released it. *See* Senate Committee on the Judiciary, *Newly Declassified Appendix to Durham Report Sheds Additional Light on Clinton Campaign Plan to Falsely Tie Trump to Russia and FBI's Failure to Investigate* (July 31, 2025), https://bit.ly/4bSimOs (hereinafter, "Senate Judiciary Committee Press Release").

22.    Administration allies touted the information in the Appendix as proof that Mrs. Clinton had in fact approved a plan to manufacture a scandal around Mr. Trump and Russia. *See, e.g.*, *Senate Judiciary Committee Press Release* (noting that the Appendix "contains previously classified information exposing a reported Clinton campaign plan to falsely tie President Donald Trump to Russia"); F.B.I. Director Kash Patel, @FBIDirectorKash, X, (July 31, 2025, 4:10 PM), https://bit.ly/4t9kIP3 (claiming the Appendix supplied "evidence that the Clinton campaign

plotted to frame President Trump and fabricate the Russia collusion hoax"); Department of Justice, *Department of Justice, CIA Transmit Declassified Durham Documents to Senator Chuck Grassley* (July 31, 2025), https://bit.ly/4stjxtF (quoting Mr. Ratcliffe, then C.I.A. director, as claiming that the Appendix proved that the Trump-Russia collusion suspicions were a "coordinated plan to prevent and destroy Donald Trump's presidency").

23.    The actual contents of the Appendix showed Mr. Durham had instead uncovered evidence that the origin story for this theory was a fabrication by a Russian intelligence agency. Charlie Savage, *Durham's Debunking of the 'Clinton Plan' Emails, Explained*, N.Y. Times (Aug. 1, 2025), https://nyti.ms/4lI6mTk; *see also* Charlie Savage and Adam Goldman, *'Clinton Plan' Emails Were Likely Made by Russian Spies, Declassified Report Shows*, N.Y. Times (July 31, 2025), https://nyti.ms/3PwcAJL.

24.    Specifically, the Appendix revealed that the "Russian intelligence" consisted of two purportedly hacked emails dated July 25 and 27, 2016. Both were attributed to an aide to the financier George Soros, but Mr. Durham's team uncovered evidence that they were instead a "composite" manufactured by stitching together excerpts from emails written by other people at think-tanks Russia had hacked. He obtained the real emails but did not report finding any authentic underlying source, even if written by someone else, for the lines about a plan.

25.    Despite the administration's apparent agreement with Mr. Grassley that declassification of the Appendix would "benefit public transparency and accountability," the declassified version contains significant redactions that make it harder to fully understand other parts of the evidence Mr. Durham gathered about the nature of the purported emails, such as key dates of other relevant materials found on the Russian intelligence agency's servers and cited in

the Appendix. There is no national-security basis to treat this information as classified and to conceal it from the American public, since the Russian government has the unredacted material.

26.    The administration also has not released the interview reports and other underlying evidence gathered by Mr. Durham that are cited in its footnotes.

27.    In addition, the administration has failed to release other documents related to the special counsel investigation that, like the Appendix and evidence referred to in it, are of "overriding public interest." One is the interim report from the summer of 2020. Another is Ms. Dannehy's September 2020 memo criticizing the substance of that report and decrying the idea of releasing it just ahead of the 2020 election. Both appear to center on this same, now-declassified material.

28.    To The Times's knowledge, the administration has not publicly explained the basis for continuing to keep these materials secret notwithstanding the information it has already declassified. Its release would help better illuminate the origins of a theory that has helped worsen political divisions in American society for years.

### The Times's FOIA Requests

29.    On December 14, 2025, Mr. Savage, on behalf of The Times, submitted a FOIA request to the DOJ Office of Information Policy ("OIP") seeking "an unredacted version of the formerly classified annex to the Durham report that was declassified and released in July 2025," as well as copies of every interview report and certain other documents cited in the Appendix's footnotes (the "December Request").

30.    On January 20, 2026, OIP acknowledged the December Request. It informed The Times that the December Request entailed "unusual circumstances" and that it would need to extend the time limit to respond by 10 business days.

31.     As of the date of this filing, OIP has not sent The Times additional correspondence regarding the December Request or produced any responsive records.

32.     On January 22, 2026, Mr. Savage, on behalf of The Times, submitted a request to DOJ's OIP seeking "1) An interim report produced in the summer of 2020 by John Durham's team about his review of the origins of Crossfire Hurricane investigation, which was not ultimately released; 2) A lengthy email/memo written in mid September 2020 by Nora Dannehy, the No. 2 to Durham, detailing her objections to the interim report, which she sent to Durham and other colleagues and then resigned in protest" (the "January Request"). Mr. Savage noted that while "[t]he interim report and Dannehy memo contained classified information at the time they were written . . . much or all of this information was declassified in July 2025 as part of the public release of the formerly classified annex to Durham 2023 report."

33.     On February 13, 2026, OIP acknowledged the January Request. It informed The Times that the January Request entailed "unusual circumstances" and that it would need to extend the time limit to respond by 10 business days.

34.     As of the date of this filing, OIP has not sent The Times additional correspondence regarding the January Request or produced any responsive records.

## FIRST CAUSE OF ACTION

35.     The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

36.     DOJ is an agency subject to FOIA and must therefore release, in response to a FOIA request, any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

37. DOJ has failed to meet the statutory deadlines set by FOIA for responding to The Times's December Request. Accordingly, The Times is deemed to have exhausted its administrative remedies under FOIA.

38. DOJ is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

39. DOJ has not demonstrated that any exemptions permit the withholding of the documents sought by the December Request.

40. Accordingly, The Times is entitled to an order compelling DOJ to produce records responsive to the December Request.

## SECOND CAUSE OF ACTION

41. The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

42. DOJ is an agency subject to FOIA and must therefore release, in response to a FOIA request, any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

43. DOJ has failed to meet the statutory deadlines set by FOIA for responding to the January Request. Accordingly, The Times is deemed to have exhausted its administrative remedies under FOIA.

44. DOJ is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

45. DOJ has not demonstrated that any exemptions permit the withholding of the documents sought by the January Request.

46.     Accordingly, The Times is entitled to an order compelling DOJ to produce records responsive to the January Request.

## **REQUEST FOR RELIEF**

WHEREFORE, The Times respectfully requests that this Court:

47.     Declare that the documents sought by The Times's FOIA requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

48.     Order DOJ to undertake an adequate search for the requested records and provide those records to The Times within 20 business days of the Court's order;

49.     Award The Times the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

50.     Grant The Times such other and further relief as this Court deems just and proper.

Dated:  New York, NY
        April 10, 2026

                                        /s/ Al-Amyn Sumar
                                        David E. McCraw
                                        Al-Amyn Sumar
                                        Jackson Busch
                                        Legal Department
                                        The New York Times Company
                                        620 Eighth Avenue
                                        New York, NY 10018
                                        Phone: (212) 556-4031
                                        Email: mccrad@nytimes.com
                                                al-amyn.sumar@nytimes.com
                                                jackson.busch@nytimes.com

                                        *Counsel for Plaintiffs*